IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES A. WILSON,          )
                         )
       Petitioner,     )     C.A. No. 04-1363-GMS
                         )
                         )
                         )
                         )
v.                        )
                         )
RICHARD KEARNEY, et al.,   )
                         )
       Respondents.    )

> **FILED**
>
> DEC 1 4 2005
>
> U.S. DISTRICT COURT
> DISTRICT OF DELAWARE

PETITIONERS' OPENING BRIEF IN SUPPORT OF HIS MOTION FOR SUMMARY JUDGMENT

*James A. Wilson* (signature)

James A. Wilson, Pro'se
S.C.I. P.O. Box 500
Georgetown, DE. 19947

Dated: 12/11/05

## TABLE OF CONTENTS

Page

I.   TABLE OF CITATIONS........................................iv

II.  STATEMENT OF NATURE OF PROCEEDINGS
     AND THE ORDER SOUGHT TO BE REVIEWED......................1

III. SUMMARY OF THE ARGUMENTS................................2

IV.  STATEMENT OF FACTS......................................4

V.   ARGUMENT:

        1.   The Superior Court erred as a matter of
        law where it denied as previously adjudicated
        most of Petitioner's claims to postconviction
        relief.

            A.   STANDARD AND SCOPE OF REVIEW.............11

            B.   MERITS OF ARGUMENT......................11

            C.   CONCLUSION..............................13

        2.   The Superior Court erred in holding that
        the   Defendant   failed   to   demonstrate
        ineffective assistance of counsel where his
        attorney  failed  to  establish  standing  to
        contest the search of Defendant's dwelling.

            A.   STANDARD AND SCOPE OF REVIEW.............14

            B.   MERITS OF ARGUMENT......................14

            C.   CONCLUSION..............................19

        3.   The Superior Court erred in holding that
        the   Defendant   failed   to   demonstrate
        ineffective  assistance  of  counsel  where
        defense counsel failed to subpoena the medical
        examiner to testify at trial.

            A.   STANDARD AND SCOPE OF REVIEW.............20

            B.   MERITS OF ARGUMENT......................20

            C.   CONCLUSION..............................23

4. The Superior Court erred in holding that the second trial in this case did not violate Defendant's right to be free from double jeopardy.

A. STANDARD AND SCOPE OF REVIEW..............24

B. MERITS OF ARGUMENT........................24

C. CONCLUSION...............................27

<u>Tab</u>

VI. ATTACHMENTS TO THE BRIEF

STATE v. GARRIS, 2002 WL 31484801 (Del.Super.)..........A

STATE v. WILSON, 812 A.2d 225 (table),
2002 WL 31106354 (Del.Supr.)..........................B

ORDER DENYING DEFENDANT'S MOTION
FOR POSTCONVICTION RELIEF..............................C

## TABLE OF CITATIONS

### CASE OPINIONS

<u>Albury v. State</u>, 551 A.2d 53 (Del. 1988)  . . . . . . 14, 23, 26

<u>Bailey v. State</u>, 588 A.2d 1121 (Del. 1991)  . . . 11, 14, 20, 24

<u>Coy v. Iowa</u>, 487 U.S. 1012 (1988) . . . . . . . . . . . . . 21

<u>Dawson v. State</u>, 673 A.2d 1186 (Del. 1996),
cert. denied, 519 U.S. 844, 117 S.Ct. 127,
136 L.Ed.2d 76 (1996) . . . . . . . . . . . 11, 13, 14, 20, 24

<u>Harris v. State</u>, 293 A.2d 291 (Del. 1972) . . . . . . . . . 12

<u>Hunter v. State</u>, 815 A.2d 730 (Del. 2002) . . . . . . . . . 26

<u>Morris v. State</u>, 795 A.2d 653 (Del. 2002) . . . . . . . . . 26

<u>Oregon v. Kennedy</u>, 456 U.S. 667 (1982) . . . . . . . . . . 25

<u>Outten v. State</u>, 720 A.2d 547 (Del. 1988) . . . . . . . . . 11

<u>Pointer v. Texas</u>, 380 U.S. 400 (1965) . . . . . . . . . . . 21

<u>State v. Garris</u>, 2002 WL 31484801 (Del.Super.) . . . . . 11, 12

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984) . . 14, 19, 23, 26

<u>Sudler v. State</u>, 611 A.2d 945 (Del. 1992) . . . . . . . . . 25

<u>Walker v. State</u>, 790 A.2d 1214 (Del. 2002) . . . . . . . . 26

<u>Williams v. State</u>, 796 A.2d 1218 (Del. 2002) . . . . . . . 26

<u>Williams v. State</u>, 803 A.2d 927 (Del. 2002) . . . . . . . . 26

<u>Wright v. State</u>, 513 A.2d 1310 (Del. 1986) . . . . . . . . 12

<u>Younger v. State</u>, 580 A.2d 552 (Del. 1990) . . . . . . . . 11

CODES AND COURT RULES

11 Del.C. § 4332 . . . . . . . . . . . . . . . . . . .   21

Delaware Lawyer's Rules of Professional Conduct, Rule 1.2(a)   23

Delaware Lawyer's Rules of Professional Conduct, Rule 1.4(b)   23

SUPER. CT. CRIM. R. 41 . . . . . . . . . . . . . . . .   15

SUPER. CT. CRIM. R. 61 . . . . . . . . . . . . . . 11, 20

SUPER. CT. CRIM. R. 16 . . . . . . . . . . . . . . 6, 25

SUPR. CT. CRIM. R. 8 . . . . . . . . . . . . . . . . .   12

U.S. CONST. amend. VI . . . . . . . . . . . . . . . .   21

U.S. CONST. amend. XIV . . . . . . . . . . . . . . . .   21

## STATEMENT OF NATURE OF THE PROCEEDINGS
## AND ORDER SOUGHT TO BE REVIEWED

This is James Wilson's appeal from the Superior Court's July 2, 2003 Order denying him postconviction relief. Defendant Wilson filed a pro-se Motion for Postconviction Relief in the Superior Court alleging Ineffective Assistance of Counsel arising out of several errors made by defense counsel, and that double jeopardy barred his May 9, 2001 retrial on charges including Possession With Intent to Deliver and Trafficking Cocaine. The Superior Court held that most of the claims were barred as previously adjudicated, and that counsel was not ineffective.

## SUMMARY OF ARGUMENTS

First, the Superior Court erred as a matter of law where it denied as previously adjudicated Petitioner's claims to postconviction relief. The Superior Court determined that the following of Defendant's claims were barred as previously adjudicated: That defense counsel was constitutionally remiss in failing to establish standing to contest the search of the Defendant's dwelling; that double jeopardy barred Defendant's May 9, 2001 trial; and that defense counsel erred in failing to require the attendance at trial of the medical examiner (hereinafter "ME"). The first and third claims are ineffective assistance of counsel claims, which could not be adjudicated prior to filing the Motion for Postconviction Relief. The second claim was not previously adjudicated because defense counsel disregarded the issue on direct appeal, without Defendant's consent.

Second, the Superior Court erred in holding that the Defendant failed to demonstrate ineffective assistance of counsel where his attorney failed to establish standing to contest the search of Defendant's dwelling. There was no legitimate reason to fail to allege standing in the Defendant's Motion to Suppress. There was no legitimate reason to fail to elicit testimony as to Defendant's reasonable expectation of privacy in the dwelling. There was no legitimate reason to fail to explain to Defendant that he had the burden of establishing standing to contest the search before asking him whether he wanted to take the stand and testify at the

2

suppression hearing.

Third, the Superior Court erred in holding that the Defendant failed to demonstrate ineffective assistance of counsel where defense counsel failed to subpoena the medical examiner to testify at trial. There is no legitimate reason to omit to require the presence of the medical examiner at trial, and Defendant's constitutional right to confront his accuser was abridged by counsel's misfeasance.

Fourth, the Superior Court erred in holding that the second trial in this case did not violate Defendant's right to be free from double jeopardy, and in holding that defense counsel was not ineffective for failing to assert the claim on direct appeal. Defendant's first trial ended in a mistrial, which was provoked by the prosecutor's decision not to make discovery where he ostensibly knew or at a minimum should have known that materials were discoverable.

## STATEMENT OF FACTS

*Arrest*

On December 9, 1999, Delaware State Police officers arrested Defendant, James Wilson, inside a private residence at 466 Kemper Drive, Brookmont Farms, Newark. Transcript of Suppression Hearing, March 16, 2001, 18-20, A-15. Defendant was at the time of the arrest "staying there". Transcript of Trial, November 3, 2000, 93/L6, A-10. Inside that residence, the officers found cocaine, marijuana, rolling papers, Defendant's identification card, a large amount of cash and other items belonging to Defendant on the living room coffee table. Transcript of Trial, May 9, 2001, 84/L2-16, A-52. At Defendant's first trial, one of the officers described how the police came upon the contraband:

> [A]fter Detective Sullivan and I effected the arrest on Mr. Wilson, read him his rights and so forth, the other entry members inside the residence, while they were making their protective sweep, went around to the living room sliding glass door to let the two officers that were in the backyard in because, as I said earlier, its kind of in the middle of the row and you have to walk down several houses to get around to the front. So, someone let them in and, as they came in, they clearly observed a substance which we later believed was cocaine in a small plastic bag, substance that we believed was marijuana, and a small glass vial, rolling papers, United States currency, a briefcase, and an ID all situated on a coffee table in close proximity of this briefcase that was opened.

Testimony of Lieutenant Patrick Ogden, Transcript of Trial, November 3, 2000, 33/L12 - 34/L4, A-5.

> "Q: Okay. Let's say -- no, no. Who let the officers in the rear door?"
> "A: That, I don't know."

4

"Q:  You don't know?"
"A:  I was busy with you while you were being
handcuffed and Mirandised."
"Q:  I mean, was it another person in the
house, or was it another officer that let him
in?"
"A:  It was -- it was part of the five-man
entry team that went in which was made up of
me, Detective Sullivan, Sergeant Crisselli,
Special Agent Bill Lutz and Special Agent Eric
Miller.  One of those other three other than
Detective Sullivan and myself opened up the
rear door to let the officers that were in the
back yard in."
"Q:  I just have to ask this question.  Why?"
"A:  Again, because they're in the back yard,
they have no idea what's going on in the
house.  And to come around to get into the
front of the house, they'd have to walk down
several houses on either side.  It's a mere
convenience, more than anything."

Testimony of Lieutenant Patrick Ogden, Transcript of Trial,
November 3, 2000, 76/L11 - 77/L8, A-7.

The Defendant admitted that the $3,034.00 United States
Currency on the coffee table was his, (Transcript of Trial, May 9,
2001, 103/L16-17, A-53), that the Marijuana was his and, although
he denied that the cocaine was his, he told arresting officers that
it was Vitamin B-12.  Transcript of Trial, May 9, 2001, 105/L19-23,
A-54.

### The 2000 Trial

Defendant stood trial in this matter first in November, 2000.
Transcript of Trial, November 3, 2000, A-4.  Prior to this first of
two trials, the Defendant was represented by Thomas Conaty, Esq.
Transcript of Trial, November 2, 2000, A-4.  On the day of trial,
the Defendant was permitted to proceed pro se and Mr. Conaty was
appointed stand-by counsel.  Transcript of Trial, November 2, 2000,

35/L1 - 38/L13, A-2, 3.  The medical examiner was present to give live testimony at that hearing.  Transcript of Trial, November 3, 2000, 80/L13-14, A-7.  The Court ended up declaring a mistrial, though, because the State did not provide Defendant with all discoverable materials -- the Deputy did not share with the Defendant a consent to search form that purported to grant police officers authority to enter the Kemper Drive address on the date of the arrest.  Transcript of Trial, November 3, 2000, 86/L17-19, A-8. To explain the discovery violation, Deputy Attorney General Veith told the Court "To answer his discovery objection, that document, the statement is not discoverable.  It's not exculpatory, anyway. It's a signed consent form by another individual who owned the actual property."  Transcript of Trial, November 3, 2000, 86/L15-19, A-8.  When questioned by the Court whether the document was not a document that should have been produced under Superior Court Criminal Rule 16, Mr. Veith stated, "I believe your Honor's correct, it would fall under that section of discovery.  State's position is we provided it prior to trial.  We provided it yesterday to the defense."  Transcript of Trial, November 3, 2000, 90/L20-23, A-9.  At some point after the 2000 trial terminated, the Superior Court appointed new counsel for the Defendant -- Andrew J. Witherell, Esq.

### Pretrial Issues

Prior to defendant's second trial, defense counsel moved the Court to suppress all evidence obtained from the residence at 466 Kemper Drive, Brookmont Farms, Newark, including cocaine,

marijuana, United States currency, and documents found in proximity
to the contraband that referred to or identified the Defendant.
The motion itself did not allege standing to complain of the
unconstitutional search.   At the beginning of the suppression
hearing, the Court asked whether there were any preliminary
comments.  Transcript of Suppression Hearing, March 16, 2001, 8/L-
10, A-12.   The Deputy Attorney General answered, "Just that the
State still contend [sic] that that the defendant lacks standing to
contest the search."  Transcript of Suppression Hearing, March 16,
2001, 8/L13-14, A-12.  At no point during the suppression hearing
did defense counsel take any action to address the issue of
defendant's expectation of privacy in the dwelling.  Transcript of
Suppression Hearing, March 16, 2001.  The motion was denied because
the Court was "satisfied that there ha[d]n't been a sufficient
showing by the defendant ... that he has standing to seek to
suppress the evidence that was found on the coffee table".
Transcript of Suppression Hearing, March 16, 2001, 139/L5-9, A-45.
Defense counsel later provided the Superior Court with a sworn
statement that he asked the Defendant during the suppression
hearing whether he wanted to testify and Defendant indicated that
he did not.  State v. Wilson, Del.Super., I.D. No. 9912006359, at
3-4, Cooch, J. (July 2, 2003) (Order), quoting Andrew J. Witherell
Aff. paragraph 8 (Dkt. #120).

Prior to Defendant's second trial in this case, the defense
also moved the Superior Court to dismiss the charges because the
second trial would unconstitutionally place the Defendant in double

jeopardy. Transcript of Suppression Hearing, March 16, 2001, 2/L16-19, A-11. The Superior Court denied that motion stating that the mistrial "was not at all the fault of the State." Transcript of Suppression Hearing, March 16, 2001, 6/L18, A-12. Defense counsel did not appeal that ruling as part of Defendant's direct appeal from conviction because he believed that the double jeopardy argument was "totally frivolous". State v. Wilson, Del.Super., I.D. No. 9912006359, at 7, Cooch, J. (July 2, 2003) (Order), quoting Andrew J. Witherell Aff. paragraph 15 (Dkt. #120).

*2001 Trial*

Apparently, on the day prior to the second trial, Defendant moved the Court to proceed pro se, and defense counsel was asked to remain as stand-by counsel. The transcript of the May 9, 2001 trial indicates that defendant represented himself with assistance from defense counsel. Transcript of Trial, May 9, 2001, 6, A-51. Prior to the second trial, while he was still Defendant's attorney as opposed to standby counsel, defense counsel did not demand the presence of the medical examiner at trial. Defense counsel would later claim that he did not demand the ME's presence because he did not consider the testimony of the ME "a critical part of the case". State v. Wilson, Del.Super., I.D. No. 9912006359, at 7, Cooch, J. (July 2, 2003) (Order), quoting Andrew J. Witherell Aff. paragraph 6 (Dkt. #120). At no point after becoming stand-by counsel did defense counsel advise Defendant that he must demand the ME's presence at trial, else presence be waived. State v. Wilson, Del.Super., I.D. No. 9912006359, at 6, Cooch, J. (July 2, 2003)

8

(Order), quoting Defendant's Memorandum in Support of Defendant's Motion for Postconviction Relief, at 7. The report of the Medical Examiner was used as affirmative evidence, in lieu of live testimony. Transcript of Trial, May 9, 2001, 101/L1 - 103/L9, A-53.

On May 10, 2001 a Superior Court jury convicted Defendant of Trafficking in Cocaine, Possession of Cocaine[1], Maintaining a Dwelling for Keeping Controlled Substances, Possession of Marijuana and Possession of Drug Paraphernalia. Transcript of Trial, May 10, 2001, 56/L3 - 57/L23, A-56, 57.

### Direct Appeal from Conviction

This Court affirmed Defendant's conviction in his direct appeal. It appears from the Court's Order in the matter that no issues were asserted, other than a claim of error for the Superior Court's denial of the Motion to Suppress on lack of standing grounds. State v. Wilson, 812 A.2d 225 (table), 2002 WL 31106354 (Del.Supr.). The issue whether double jeopardy barred Defendant's retrial, which had been raised at the trial court level, was not raised in the direct appeal as defense counsel apparently did not feel that the claim was meritorious. State v. Wilson, Del.Super., I.D. No. 9912006359, at 14, Cooch, J. (July 2, 2003) (Order). This Court, in Defendant's direct appeal from his conviction in this case, certainly did not address any ineffective assistance of

---

[1] The jury did not convict Defendant of the offense charged, Possession With Intent to Deliver Cocaine, as the Superior Court suggests in its Order of July 2, 2003. Transcript of Trial, May 10, 2001, P. 56.

counsel claims.  <u>State v. James Wilson</u>, 812 A.2d 225 (table), 2002 WL 31106354 (Del.Supr.).

ARGUMENT

**1. The Superior Court erred as a matter of law where it denied as previously adjudicated most of Petitioner's claims to postconviction relief.**

*Standard and Scope of Review*

Generally, the Supreme Court reviews the Superior Court's denial of postconviction relief for abuse of discretion. Dawson v. State, 673 A.2d 1186, 1190, 1196 (Del. 1996), cert. denied, 519 U.S. 844, 117 S.Ct. 127, 136 L.Ed.2d 76 (1996), citing Bailey v. State, 588 A.2d 1121, 1124 (Del. 1991). The Court will "carefully review the record to determine whether 'competent evidence supports the court's findings of fact and whether its conclusions of law are not erroneous.'" Outten v. State, 720 A.2d 547 (Del. 1988), quoting Dawson v. State, 673 A.2d at 1190, 1196. Questions of law are reviewed de novo. Dawson v. State, 673 A.2d at 1190 (cit.om).

*Merits of the Argument*

When considering a Motion for Postconviction Relief, the Superior Court must first determine whether the Defendant has met the procedural requirements of Superior Court Criminal Rule 61(i). State v. Garris, 2002 WL 31484801, 2 (Del.Super.), citing Bailey v. State, 588 A.2d 1121, 1127 (Del.Super. 1991), Younger v. State, 580 A.2d 552, 554 (Del. 1990)(citations omitted). One of the procedural bars of Rule 61(i) is the requirement that issues presented in the application for postconviction relief be not formerly adjudicated. SUPER. CT. CRIM. R. 61(i)(4). In this case, the Superior Court determined that the following of Defendant's claims were barred as previously adjudicated: That defense counsel

11

was constitutionally remiss in failing to establish standing to contest the search of the Defendant's dwelling;  that double jeopardy barred Defendant's May 9, 2001 trial;  and that defense counsel erred in failing to require the attendance at trial of the medical examiner.  State v. Wilson, Del.Super., I.D. No. 9912006359, at 11, Cooch, J. (July 2, 2003) (Order).

This determination was made in error.  The first and third claims are ineffective assistance of counsel claims.  "An allegation of ineffective assistance of counsel is a type of claim not subject to the procedural default rule, in part because the Delaware Supreme Court will not generally hear such claims for the first time on direct appeal unless the claim was adequately raised in the lower court." State v. Garris, 2002 WL 31484801, 3 (Del.Super.), citing SUPR. CT. CRIM. R. 8, Wright v. State, 513 A.2d 1310, 1315 (Del. 1986), and Harris v. State, 293 A.2d 291, 293 (Del. 1972).  This Court, in Defendant's direct appeal from his conviction in this case, did not address any ineffective assistance of counsel claims.  State v. James Wilson, 812 A.2d 225 (table), 2002 WL 31106354 (Del.Supr.).  Accordingly, the Superior Court erred in denying relief on those claims.

The second claim that the Superior Court rejected as adjudicated was Defendant's claim that double jeopardy barred his May 9, 2001 reprosecution.  The Superior Court held that the claim was barred because the Defendant made the claim through counsel in the Superior Court before the second trial began.  State v. Wilson, Del.Super., I.D. No. 9912006359, at 11, Cooch, J. (July 2, 2003)

12

(Order), citing State v. Wilson, Del.Super., I.D. No. 9912006359, Cooch, J. (Mar. 16, 2001) (Bench Ruling). However, this claim was not advanced by Defendant's counsel after the initial denial in March of 2001. Counsel apparently did not feel that the claim was meritorious, and it was not asserted in this Court on direct appeal. State v. Wilson, Del.Super., I.D. No. 9912006359, at 14, Cooch, J. (July 2, 2003) (Order).

"Where an issue is not raised on direct appeal, the Court should determine if defense counsel was responsible for the defendant's failure to raise the claim..." Dawson v. State, 673 A.2d 1186, 1190 (Del. 1996). Defendant filed an ineffective assistance of counsel claim in this matter alleging that defense counsel was remiss for failing to press the issue on appeal and for failing to consult with the Defendant regarding issues to be presented. Defendant's Motion for Postconviction Relief, 3, A-58. That issue is taken up later in this brief. Because Defendant ostensibly desired to press the double jeopardy issue on appeal, but was denied the opportunity to do so, the claim was not previously adjudicated such that it is barred.

### Conclusion

The claims denied as previously adjudicated were not barred from consideration.

**2.  The Superior Court erred in holding that the Defendant failed to demonstrate ineffective assistance of counsel where his attorney failed to establish standing to contest the search of Defendant's dwelling.**

*Standard and Scope of Review*

The Supreme Court reviews the Superior Court's denial of postconviction relief for abuse of discretion. <u>Dawson v. State</u>, 673 A.2d 1186, 1190, 1196, cert. denied, 519 U.S. 844, 117 S.Ct. 127, 136 L.Ed.2d 76 (1996), citing <u>Bailey v. State</u>, 588 A.2d 1121, 1124 (Del. 1991).

*Merits of the Argument*

In his Motion for Postconviction Relief, Defendant asserted that his defense counsel rendered ineffective assistance by failing to demonstrate Defendant's standing to contest the search of his dwelling, which resulted in discovery of contraband.  Defendant's Motion for Postconviction Relief, 3, A-58.  The error rendered the result of Defendant's trial unconstitutionally defective because, due to the error, defense counsel's representation fell below an objective standard of reasonableness, and because there is a reasonable probability that in the absence of that error, the result of the trial would have been different.  <u>Albury v. State</u>, 551 A.2d 53 (Del. 1988) (adopting <u>Strickland v. Washington</u>, 466 U.S. 668 (1984)).

Prior to defendant's March 16, 2001 trial, defense counsel moved the Court to suppress all evidence obtained from the residence at 466 Kemper Drive, Brookmont Farms, including cocaine, marijuana, United States currency, and documents found in proximity to the contraband that referred to or identified the Defendant.

14

The motion itself did nothing to establish standing to complain of the unconstitutional search. SUPER. CT. CRIM. R. 41(f). The motion was therefore negligently drafted.

At the beginning of the suppression hearing, the Court asked whether there were any preliminary comments. Transcript of Suppression Hearing, March 16, 2001, 8/L-10, A-12. The Deputy Attorney General answered, "Just that the State still contend [sic] that that the defendant lacks standing to contest the search." Transcript of Suppression Hearing, March 16, 2001, 8/L13-14, A-12. Accordingly, a reasonable defense counsel would have been on notice at the beginning of the suppression heaing that standing to contest the search was in issue and would have to be proved.

At no point during the suppression hearing did defense counsel take any action to address the issue of defendant's expectation of privacy in the dwelling. Transcript of Suppression Hearing, March 16, 2001, A-11. The motion was denied because the Court was "satisfied that there ha[d]n't been a sufficient showing by the defendant ... that he has standing to seek to suppress the evidence that was found on the coffee table". Transcript of Suppression Hearing, March 16, 2001, 139/L5-9, A-45.

Such misfeasance on the part of defense counsel is inexplicable. The only possible reason undersigned counsel can conceive for defense counsel's failure to put the Defendant on the stand to establish standing is that perhaps defense counsel anticipated that Defendant's statements concerning his interest in the premises could be later used against Defendant to infer

15

possession of the contraband found on the coffee table in the living room. Defense counsel, however, would have presumably reviewed discovery materials and known as of the date of the suppression hearing that the Defendant admitted that the $3,034.00 United States Currency on the coffee table was his, ((Transcript of Trial, May 9, 2001, 103/L16-17, A-53), that he admitted the Marijuana was his, and that although he denied that the cocaine was his, he told arresting officers that it was Vitamin B-12. Transcript of Trial, May 9, 2001, 105/L19-23, A-54. In other words, there would have been nothing to risk by having the Defendant testify at the suppression hearing that he had at least spent the night in the dwelling. He had made far more inculpatory statements already.

In his own defense, defense counsel provided the Superior Court with a sworn statement that he asked the Defendant during the suppression hearing whether he wanted to testify and he indicated that he did not. State v. Wilson, Del.Super., I.D. No. 9912006359, at 3-4, Cooch, J. (July 2, 2003) (Order), quoting Andrew J. Witherell Aff. paragraph 8 (Dkt. #120). However, there is no indication that defense counsel ever informed the Defendant that he had failed to attach an affidavit to establish standing, that Defendant's standing was being challenged, and that there were no facts on record to establish defendant's reasonable expectation of privacy in the dwelling. Had he, Defendant most certainly would have elected to testify to establish standing to contest the search. He likely would have testified, "I was staying there...".

16

Transcript of Trial, November 3, 2000, 93/L6, A-10.

Had defense counsel established standing to contest the search, things may have turned out differently. First, the apparent reason that Defendant moved the Court to proceed pro se is that he was upset with his attorney for neglecting to establish standing at the suppression hearing. Had Defendant been represented by counsel during trial, he may have been acquitted of the Trafficking charge as well as the Possession with Intent to Deliver charge. After all, experienced counsel such as Mr. Witherell might have indicated to the jury that the State elected not to produce the medical examiner, the inference being that the State was attempting to conceal facts, or that the State was less than conscienscious in securing the presence of all the witnesses the jury needed to hear from in order to convict without reasonable doubts.

Second, had the Court found standing to contest the search, or had defense counsel seen fit to establish standing and vigorously argue Defendan't Fourth Amendment rights, then perhaps a more searching inquiry would have been made into the basis for police presence in the living room of the Brookmont Farms residence. Had that more searching inquiry been made, the Court may have learned at the suppression hearing that the reason the officers found the drugs in the living room was *mere convenience*:

> [A]fter Detective Sullivan and I effected the arrest on Mr. Wilson, read him his rights and so forth, the other entry members inside the residence, while they were making their protective sweep, went around to the living room sliding glass door to let the two

17

officers that were in the backyard in because, as I said earlier, its kind of in the middle of the row and you have to walk down several houses to get around to the front. So, someone let them in and, as they came in, they clearly observed a substance which we later believed was cocaine in a small plastic bag, substance that we believed was marijuana, and a small glass vial, rolling papers, United States currency, a briefcase, and an ID all situated on a coffee table in close proximity of this briefcase that was opened.

Testimony of Lieutenant Patrick Ogden, Transcript of Trial, November 3, 2000, 33/L12 - 34/L4, A-5.

"Q: Okay. Let's say -- no, no. Who let the officers in the rear door?"
"A: That, I don't know."
"Q: You don't know?"
"A: I was busy with you while you were being handcuffed and Mirandised."
"Q: I mean, was it another person in the house, or was it another officer that let him in?"
"A: It was -- it was part of the five-man entry team that went in which was made up of me, Detective Sullivan, Sergeant Crisselli, Special Agent Bill Lutz and Special Agent Eric Miller. One of those other three other than Detective Sullivan and myself opened up the rear door to let the officers that were in the back yard in."
"Q: I just have to ask this question. Why?"
"A: Again, because they're in the back yard, they have no idea what's going on in the house. And to come around to get into the front of the house, they'd have to walk down several houses on either side. It's a mere convenience, more than anything."

Testimony of Lieutenant Patrick Ogden, Transcript of Trial, November 3, 2000, 76/L11 - 77/L8, A-7.

This Court on direct appeal would have been confronted with this information, and perhaps this Court would have reversed the Superior Court's denial of the Defendant's Motion to Suppress

18

instead of simply affirming for lack of standing.  <u>State v. Wilson</u>, 812 A.2d 225 (table), 2002 WL 31106354 (Del.Supr.).

Accordingly, defense counsel's failure to establish standing undermines confidence in the outcome of the trial.  <u>Strickland v. Washington</u>, 466 U.S. 668 (1984).

*Conclusion*

Defense counsel rendered ineffective assistance when he neglected to establish standing in Defendant's Motion to Suppress and when he neglected to adduce evidence at the suppression hearing that Defendant had standing to contest the search.

19

**3.  The Superior Court erred in holding that the Defendant failed to demonstrate ineffective assistance of counsel where defense counsel failed to subpoena the medical examiner to testify at trial.**

*Standard and Scope of Review*

The Supreme Court reviews the Superior Court's denial of postconviction relief for abuse of discretion. <u>Dawson v. State</u>, 673 A.2d 1186, 1190, 1196, cert. denied, 519 U.S. 844, 117 S.Ct. 127, 136 L.Ed.2d 76 (1996), citing <u>Bailey v. State</u>, 588 A.2d 1121, 1124 (Del. 1991).

*Merits of the Argument*

In his Motion for Postconviction Relief, the Defendant asserted that the trial attorney rendered ineffective assistance by failing to subpoena the medical examiner to appear at trial and testify regarding chain of custody and the nature of the substances tested.  Defendant's Motion for Postconviction Relief, 3, A-58. The Superior Court denied Defendant's postcoviction relief motion, holding that defense counsel's decision not to summon the medical examiner was not constitutionally defective.  <u>State v. Wilson</u>, Del.Super., I.D. No. 9912006359, at 14, Cooch, J. (July 2, 2003) (Order).

Defendant also claimed in his postconviction relief motion that Defendant was denied sufficient time to subpoena the medical examiner.  Defendant's Motion for Postconviction Relief, 3, A-58. The Superior Court denied that claim on the basis that no continuance request was ever made, and so the claim was waived under Superior Court Criminal Rule 61(i)(3).  <u>State v. Wilson</u>, Del.Super., I.D. No. 9912006359, at 15, Cooch, J. (July 2, 2003)

(Order).

Generally, defendants in criminal proceedings are afforded a right to hear and confront the witnesses against them. U.S. CONST. amend. VI. The Fourteenth Amendment imposes this requirement upon the states. <u>Pointer v. Texas</u>, 380 U.S. 400 (1965). Face-to-face confrontation assures accuracy and reliability of the accuser's testimony. <u>Coy v. Iowa</u>, 487 U.S. 1012 (1988). The right to a face-to-face confrontation is not absolute. "[A] defendant's right to confront accusatory witnesses may be satisfied absent a physical, face-to-face confrontation at trial only where denial of such confrontation is necessary to further an important public policy and only where the reliability of the testimony is otherwise assured." <u>Id.</u> at 1021.

Here, the state had no interest that would support omitting the live testimony of the ME (other than getting through the trial more quickly). And the defendant certainly had no interest that could in any conceivable way be advanced by failing to demand the presence of the ME at trial under 11 <u>Del.C.</u> § 4332. Rather than having his interests advanced by a strategic decision on the part of defense counsel to omit to demand the presence of the ME at trial, Defendant's confrontation right was abridged by defense counsel, who negligently failed to demand the presence of the ME, and by the Superior Court, which failed to recognize and protect Defendant's right.

In addition to being denied his constitutional right to confront his accuser, he was denied the opportunity to question

21

whether the ME followed correct procedure for weighing and testing the substances.  He was denied the ability to question whether the chain of custody was broken at any point during the time the controlled substances were in the possession of the ME's office.

Furthermore, it appears that defense counsel never advised the Defendant that he must demand the ME's presence at trial.  State v. Wilson, Del.Super., I.D. No. 9912006359, at 6, Cooch, J. (July 2, 2003) (Order), quoting Defendant's Memorandum in Support of Defendant's Motion for Postconviction Relief, at 7.  Had he been so advised, he certainly would not have foregone the opportunity to have the ME present for cross-examination.  In addition, the ME was present without apparent demand in Defendant's first pro se trial in November, 2000.  Transcript of Trial, November 3, 2000, 80/L13-14, A-7.  Thus, either the ME had already been demanded by Defendant's prior counsel, prior to the first trial in November 2000, or it is entirely reasonable for this Court to conclude that the Defendant pro-se was without blame for having failed to demand the ME's presence.

It is not reasonable, not is particularly ethical, for the defense attorney to claim good cause for unilaterally decided not to demand the ME's presence at trial.  Defense counsel claimed by affidavit that he did not demand the ME's presence at trial because he did not consider the testimony of the ME "a critical part of the case".  State v. Wilson, Del.Super., I.D. No. 9912006359, at 7, Cooch, J. (July 2, 2003) (Order), quoting Andrew J. Witherell Aff. paragraph 6 (Dkt. #120).  That simply was not defense counsel's

decision to make. "A lawyer shall explain a matter to the extent reasonably necessary to permit the client to make informed decisions regarding the representation." Delaware Lawyer's Rule of Professional Conduct 1.4(b). Further, "[a] lawyer shall abide by a client's decisions concerning the objectives of representation ... and shall consult with the client as to the means by which they are to be pursued." Delaware Lawyer's Rule of Professional Conduct 1.2(a). Defense counsel should have informed the Defendant that he had to demand the ME's appearance at trial if he desired to have the presence of the ME. Then, if Defendant agreed that his interests would not be advanced by requiring the ME to testify, the ME's presence could have been omitted. Defense counsel's error rendered the result of Defendant's trial unconstitutionally defective because, due to the error, defense counsel's representation fell below an objective standard of reasonableness, and because there is a reasonable probability that in the absence of that error, the result of the trial would have been different. Albury v. State, 551 A.2d 53 (Del. 1988) (adopting Strickland v. Washington, 466 U.S. 668 (1984)).

### Conclusion

Defense counsel's failure to demand the presence of the medical examiner at trial, coupled with the Court's failure to continue the matter so that Defendant could require his accuser's presence, does not merely establish ineffective assistance -- it results in a violation of Defendant's constitutional rights.

**4.  The Superior Court erred in holding that the second trial in this case did not violate Defendant's right to be free from double jeopardy.**

*Standard and Scope of Review*

The Supreme Court reviews the Superior Court's denial of postconviction relief for abuse of discretion.  <u>Dawson v. State</u> 673 A.2d 1186, 1190, 1196, cert. denied, 519 U.S. 844, 117 S.Ct. 127, 136 L.Ed.2d 76 (1996), citing <u>Bailey v. State</u>, 588 A.2d 1121, 1124 (Del. 1991).

*Merits of the Argument*

Prior to Defendant's second trial in this case, the defense moved the Superior Court to dismiss because the second trial would unconstitutionally place the Defendant in double jeopardy. Transcript of Suppression Hearing, March 16, 2001, 2/L16-19, A-11. The Superior Court denied that motion stating that the mistrial "was not at all the fault of the State." Transcript of Suppression Hearing, March 16, 2001, 6/L18, A-12.  Defense counsel did not appeal that ruling as part of Defendant's direct appeal from conviction because he believed that the double jeopardy argument was "totally frivolous".  <u>State v. Wilson</u>, Del.Super., I.D. No. 9912006359, at 7, Cooch, J. (July 2, 2003) (Order), quoting Andrew J. Witherell Aff. paragraph 15 (Dkt. #120).

In his Motion for Postconviction Relief, Defendant asserted that his defense attorney on appeal should have pressed the double jeopardy issue. Defendant's Motion for Postconviction Relief, P. 3, A-58. The Superior Court ruled that failing to press the issue on appeal was not a deviation from an objective standard of defense

counsel reasonableness.  <u>State v. Wilson</u>, Del.Super., I.D. No. 9912006359, at 13-14, Cooch, J. (July 2, 2003) (Order).  However, because the mistrial was indeed caused by the state, the double jeopardy issue should have been asserted in Defendant's direct appeal from his conviction.

Usually, if the defendant moves for mistrial, double jeopardy will not bar reprosecution; but where governmental malfeasance provokes the defendant into moving for a mistrial, double jeopardy will bar reprosecution.  <u>Sudler v. State</u>, 611 A.2d 945 (Del. 1992), citing <u>Oregon v. Kennedy</u>, 456 U.S. 667 (1982).

Here, the state's failure to make discovery provoked the Defendant to move for a mistrial.  It appears from the trial transcript of November 3, 2000 that Deputy Attorney General Veith may not have known that the document was discoverable:  "To answer his discovery objection, that document, the statement is not discoverable.  It's not exculpatory, anyway.  It's a signed consent form by another individual who owned the actual property."  Transcript of Trial, November 3, 2000, 86/L15-19, A-8.

However, it is hard to believe that a prosecutor with numerous years of experience would not know that the document was discoverable.  In fact, when questioned by the Court whether the document was not a document that should have been produced under Superior Court Criminal Rule 16(c), Mr. Veith changed his position: "I believe your Honor's correct, it would fall under that section of discovery.  State's position is we provided it prior to trial. We provided it yesterday to the defense."  Transcript of Trial,

November 3, 2000, 90/L20-23, A-9. Such an admission serves only to raise the question whether Deputy Veith knew the document was discoverable but intentionally withheld it from the Defendant.

On direct appeal from Defendant's conviction, Defense counsel should have asserted Defendant's right to be free from double jeopardy. Failure to do so rendered the result of Defendant's direct appeal unconstitutionally defective because, due to the error, defense counsel's representation fell below an objective standard of reasonableness, and because there is a reasonable probability that in the absence of that error, the result of the appeal would have been different. Albury v. State, 551 A.2d 53 (Del. 1988) (adopting Strickland v. Washington, 466 U.S. 668 (1984)).

Had defense counsel appealed the Superior Court's denial of Defendant's double jeopardy claim, this Court may have held that the second trial should have been barred. As has already been stated, the cause of the mistrial was the state's malfeasance. This Court has reversed convictions where such malfeasance so demands. Hunter v. State, 815 A.2d 730 (Del. 2002); Morris v. State, 795 A.2d 653 (Del. 2002); Walker v. State, 790 A.2d 1214 (Del. 2002); Williams v. State, 796 A.2d 1218 (Del. 2002); Williams v. State, 803 A.2d 927 (Del. 2002). Accordingly, the result of the prosecution would have been different had defense counsel asserted the double jeopardy issue on appeal.

Conclusion

Petitioner respectfully request that this Honorable Court grant him Motion For Summary
Judgment  from the following reasons.

Dated: December 11, 2005

                                                James A.Wilson, Pro'se
                                                James A. Wilson, Pro'se
                                                S.C.I. P.O. 500 Georgetown,DE
                                                19947

I/M: James Wilson BLDG: Merit/East
SUSSEX CORRECTIONAL INSTITUTION
P.O. BOX 500
GEORGETOWN, DELAWARE    19947

U.S. POSTAGE
$01.060
FROM ZIP CODE
1855  PB2230370
7989  DEC 13 05
1112    19947

U.S.
X-RAY

Office of The
United States District Court
844 N. King St, Lockbox 18
Wilm, DE. 19801-3570