IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

JAMES A. WILSON,                     )
                                     )
          Petitioner,                )
                                     )
     v.                              )     Civ. A. No. 04-1363-GMS
                                     )
THOMAS L. CARROLL, Warden,[1]        )
                                     )
          Respondent.                )

———— ————

James A. Wilson. *Pro se* petitioner.

Gregory E. Smith, Deputy Attorney General, Delaware Department of
Justice, Wilmington, Delaware.  Attorney for respondent.

———— ————

**MEMORANDUM OPINION**

August ___, 2006
Wilmington, Delaware

---

[1]Wilson was transferred to the Delaware Correctional Center during the pendency of his
habeas petition.  The name of the appropriate warden has been inserted in the caption. *See* Rule
2(a), 28 U.S.C. foll. § 2254.



Sleet, District Judge

## I. INTRODUCTION

Petitioner James A. Wilson ("Wilson") is an inmate at the Delaware Correctional Center

in Smyrna, Delaware.  Wilson filed the pending petition for a writ of habeas corpus ("petition")

pursuant to 28 U.S.C. § 2254.  (D.I. 1.)   For the reasons that follow, the court will dismiss his

petition.

## II.  FACTUAL AND PROCEDURAL BACKGROUND

On December 9, 2000, Federal agents and Delaware police received information from a

woman named Okeman Davis that Wilson could be found at her residence in Newark, Delaware.

At that time, Wilson was a fugitive wanted on multiple drug charges.  Ms. Davis told the police

that she picked up Wilson at a hotel in Wilmington earlier that day and drove him to her

townhome.  After informing police about Wilson's whereabouts, Ms. Davis executed a form

authorizing the police to enter and search her residence.   The police searched Ms. Davis'

residence and discovered drugs, drug paraphernalia, and a large quantity of currency on the living

coffee table.  The police also encountered Wilson in the apartment and arrested him. *See Wilson*

*v. State*, 841 A.2d 309 (Table), 2004 WL 220320, at *1 (Feb. 2, 2004).

In January 2000, a New Castle grand jury indicted Wilson on one count of trafficking in

cocaine (5 to 50 grams) in violation of Del. Code Ann. tit. 16, § 4753A(a)(2)(a), one count of

possession with intent to distribute cocaine in violation of Del. Code Ann. tit. 16, § 4751(a), one

count of maintaining a vehicle for keeping controlled substances in violation of Del. Code Ann.

1

tit. 16, § 4755(a)(5), one count of possession of marijuana in violation of Del. Code. Ann. tit. 16,

4754(a), and one count of possession of drug paraphernalia in violation of Del. Code Ann. tit. 16,

§ 4771. Wilson was initially represented by an attorney from the Public Defender's Office but,

when his trial started on November 2, 2000, he elected to represent himself with the public

defender acting as stand-by counsel. On November 3, 2000, the Superior Court declared a

mistrial due to an automatic discovery violation stemming from the State's failure to show

Wilson Ms. Davis' signed consent form until the second day of his trial.[2]

On January 16, 2001, prior to the start of his second trial, and now represented by another

attorney, Wilson filed a motion to suppress the drugs and paraphernalia seized by the police, as

well as a motion to dismiss on double jeopardy grounds. The Superior Court conducted an

evidentiary hearing, and denied the suppression motion after determining that Wilson lacked

standing to challenge the search and that Ms. Davis, the tenant or owner of the townhome, had

signed a valid consent form. The Superior Court also denied the motion to dismiss. Wilson's

second trial began, and again, he elected to represent himself. A Superior Court jury convicted

Wilson of all charges in the indictment on May 10, 2001. The Superior Court sentenced Wilson

to a 10 years at Level V incarceration on the trafficking charge, three years of which were

mandatory, and the remaining charges all carried various probationary sentences. On direct

appeal, Wilson's appointed counsel argued that the Superior Court erred in denying his

suppression motion on the basis that Wilson lacked standing to challenge the search. The

Delaware Supreme Court affirmed the Superior Court's judgment after determining that the

---

[2]The record reveals that the State showed the form to Wilson's attorney on the first day of trial while the attorney still represented Wilson. According to the attorney, he then apprised Wilson that the State had the consent form. Wilson, however, denied that communication.

2

Superior Court's order denying Wilson's suppression motion was factually and legally correct. *Wilson v. State*, 2002 WL 31106354 (Del. 2002).

In October 2002, Wilson filed a *pro se* motion for post-conviction relief pursuant to Delaware Superior Court Criminal Rule 61, arguing that: (1) counsel performed ineffectively at the suppression hearing; (2) the trial court violated Del. Code Ann. tit. 10, § 4332 by granting Wilson's motion to proceed *pro se* only two days before the start of Wilson's second trial; and (3) Wilson should never have been re-tried because his first trial ended in a mistrial as the result of an apparent discovery violation. *See Wilson v. State*, 841 A.2d 309 (Table), 2004 WL 220320, at *2 (Del. Feb. 2, 2004). The Superior Court denied the motion. Wilson appealed that judgment, arguing that: (1) the police search and seizure of evidence violated his Fourth Amendment rights; (2) trial counsel performed ineffectively at the suppression hearing and also at trial; and (3) Wilson's second trial violated his right against double jeopardy. *See Wilson v. State*, 841 A.2d 309 (Table), 2004 WL 220320, at *2 (Del. Feb. 2, 2004). The Delaware Supreme Court affirmed the Superior Court's judgment. *Id.*

Wilson filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, and the State filed an answer. (D.I. 1; D.I. 13.) In December 2005, Wilson filed a motion for summary judgment and a brief in support of the motion. (D.I. 15; D.I. 16.)

Wilson's petition is ready for review.

## III. GOVERNING LEGAL PRINCIPLES

### A. The Antiterrorism and Effective Death Penalty Act of 1996

Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") "to reduce delays in the execution of state and federal criminal sentences . . . and to further the

principles of comity, finality, and federalism." *Woodford v. Garceau*, 538 U.S. 202, 206

(2003)(internal citations and quotation marks omitted).  Pursuant to AEDPA, a federal court may

consider a habeas petition filed by a state prisoner only "on the ground that he is in custody in

violation of the Constitution or laws or treaties of the United States."  28 U.S.C. § 2254(a).

AEDPA imposes procedural requirements and standards for analyzing the merits of a habeas

petition in order to "prevent federal habeas 'retrials' and to ensure that state-court convictions are

given effect to the extent possible under law."  *Bell v. Cone*, 535 U.S. 685, 693 (2002); *see*

*Woodford,* 538 U.S. at 206.

### B.  Exhaustion and Procedural Default

Absent exceptional circumstances, a federal court cannot grant habeas relief unless the

petitioner has exhausted all means of available relief under state law.  28 U.S.C. § 2254(b);

*O'Sullivan v. Boerckel*, 526 U.S. 838, 842-44 (1999); *Picard v. Connor*, 404 U.S. 270, 275

(1971).  AEDPA states, in pertinent part:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to
> the judgment of a State court shall not be granted unless it appears that –
>
> (A) the applicant has exhausted the remedies available in the courts of the State; or
>
> (B)(i) there is an absence of available State corrective process; or
>    (ii) circumstances exist that render such process ineffective to protect the rights of the
>         applicant.

28 U.S.C. § 2254(b)(1).

The exhaustion requirement is based on principles of comity, requiring a petitioner to

give "state courts one full opportunity to resolve any constitutional issues by invoking one

complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at

844-45; *Werts v. Vaughn*, 228 F.3d 178, 192 (3d Cir. 2000). A petitioner satisfies the exhaustion requirement by demonstrating that the habeas claims were "fairly presented" to the state's highest court, either on direct appeal or in a post-conviction proceeding. *See Lambert v. Blackwell*, 134 F.3d 506, 513 (3d Cir. 1997)(citations omitted); *Coverdale v. Snyder*, 2000 WL 1897290, at *2 (D. Del. Dec. 22, 2000). "'Fair presentation' of a claim means that the petitioner 'must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted.'" *Holloway v. Horn*, 355 F.3d 707, 714 (3d Cir. 2004)(citing *McCandless v. Vaughn*, 172 F.3d 255, 261 (3d Cir. 1999)).

A petitioner's failure to exhaust state remedies will be excused if state procedural rules preclude him from seeking further relief in state courts. *Lines v. Larkins,* 208 F.3d 153, 160 (3d Cir. 2000); *Wenger v. Frank,* 266 F.3d 218, 223 (3d Cir. 2001); *see Teague v. Lane,* 489 U.S. 288, 297-98 (1989). Nevertheless, such unexhausted claims are procedurally defaulted. *Lines,* 208 F.3d at 160. Similarly, if a state court refused to consider a petitioner's claims for failing to comply with an independent and adequate state procedural rule, the claims are deemed exhausted but procedurally defaulted. *Harris v. Reed,* 489 U.S. 255, 263 (1989); *Werts*, 228 F.3d at 192.

Federal courts may not consider the merits of procedurally defaulted claims unless the petitioner demonstrates either cause for the procedural default and actual prejudice resulting therefrom, or that a fundamental miscarriage of justice will result if the court does not review the claims. *McCandless v. Vaughn,* 172 F.3d 255, 260 (3d Cir. 1999); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 861-62 (3d Cir. 1992). To demonstrate cause for a procedural default, a petitioner must show that "some objective factor external to the defense impeded counsel's efforts to comply with the State's procedural rule." *Murray v.*

5

*Carrier,* 477 U.S. 478, 488 (1986). A petitioner can demonstrate actual prejudice by showing "not merely that the errors at . . . trial created a possibility of prejudice, but that they worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Id.* at 494.

Alternatively, a federal court may excuse a procedural default if the petitioner demonstrates that failure to review the claim will result in a fundamental miscarriage of justice. *Edwards v. Carpenter,* 529 U.S. 446, 451 (2000); *Wenger v. Frank,* 266 F.3d 218, 224 (3d Cir. 2001). A petitioner demonstrates a miscarriage of justice by showing a "constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray,* 477 U.S. at 496. Actual innocence means factual innocence, not legal insufficiency, *Bousley v. United States*, 523 U.S. 614, 623 (1998), and is established if no reasonable juror would have voted to find the petitioner guilty beyond a reasonable doubt. *Sweger v. Chesney,* 294 F.3d 506, 522-24 (3d Cir. 2002).

### C. Standard of Review Under AEDPA

If a federal court determines that a claim is not procedurally defaulted and the state court adjudicated the federal claim on the merits, the court can only grant habeas relief if the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d)(1), (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Appel v. Horn*, 250 F.3d 203, 210 (3d Cir. 2001). A claim is considered to have been "adjudicated on the merits"

for the purposes of 28 U.S.C. § 2254(d)(1) if the state court "decision finally resolv[es] the

parties claims, with *res judicata* effect, [and] is based on the substance of the claim advanced,

rather than on a procedural, or other ground." *Rompilla v. Horn*, 355 F.3d 233, 247 (3d Cir.

2004)(internal citations omitted), *reversed on other grounds by Rompilla v. Beard*, 545 U.S.

1086 (2005).

When reviewing a § 2254 petition, a federal court must presume the state court's

determinations of factual issues are correct, unless the petitioner presents clear and convincing

evidence to the contrary. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 341

(2003) (stating that the clear and convincing standard in § 2254(e)(1) applies to factual issues,

whereas the unreasonable application standard of § 2254(d)(2) applies to factual decisions). This

presumption of correctness applies to both explicit and implicit findings of fact. *Campbell v.*

*Vaughn*, 209 F.3d 280, 286 (3d Cir. 2000).

## IV. DISCUSSION

Wilson asserts the following five grounds for relief in his petition:[3] (1) the evidence

seized by the police should have been suppressed; (2) his arrest was illegal because it was based

on the illegal seizure of evidence; (3) counsel provided ineffective assistance by failing to: a)

subpoena a medical examiner as a witness; b) raise the issue of double jeopardy on appeal; and c)

call Wilson as a witness in the suppression hearing; (4) his re-trial violated the double jeopardy

clause; and (5) his conviction was obtained in violation of *Brady v. Maryland*, 373 U.S. 83

(1963). (D.I. 1.)

---

[3]The court has re-numbered Wilson's claims, but has not altered the substance of the claims.

7

### A. Fourth Amendment violations

Claims one and two allege violations of the Fourth Amendment.  Pursuant to *Stone v. Powell*, 428 U.S. 465, 494 (1976),  federal courts cannot provide habeas review of Fourth Amendment claims if the petitioner had a full and fair opportunity to litigate the claims in the state courts.  *See also Wright v. West*, 505 U.S. 277, 293 (1992)("We have also held . . . that claims under *Mapp* [alleging evidence obtained in violation of the Fourth Amendment] are not cognizable on habeas as long as the courts have provided a full and fair opportunity to litigate them at trial or on direct review.").  A petitioner has had a full and fair opportunity to litigate Fourth Amendment claims if the state has an available mechanism for suppressing evidence seized in or tainted by an illegal search or seizure.  *See U.S. ex rel. Hickey v. Jeffes*, 571 F.2d 762, 766 (3d Cir. 1978);  *Petillo v. New Jersey*, 562 F.2d 903, 906-07 (3d Cir. 1977).  The only way a petitioner can avoid the *Stone* bar on habeas review is to demonstrate that the state system contains a structural defect that prevented the state from fully and fairly hearing his Fourth Amendment claims.  *Marshall v. Hendricks*, 307 F.3d 36, 82 (3d Cir. 2002).

In the instant situation, Wilson filed a pre-trial suppression motion pursuant to Delaware Superior Court Criminal Rule 41, arguing that the search was unreasonable because there was no constitutional basis for extending the search beyond Wilson's person.  (D.I. 16, App. to Appellant's Op. Br. in *Wilson v. State*, No.446,2001, at A-39 to A-42.)   The Superior Court conducted an evidentiary hearing and denied the suppression motion after determining that Wilson did not have standing to contest the search and that the police conducted the search pursuant to a valid consent form signed by Ms. Davis.  On direct appeal, Wilson argued that: (1) he did have standing to contest the search; (2)  there was no reasonable belief that Ms. Davis had

8

common control of the apartment substantiating her right to consent to the search of another; (3)

the search exceeded the scope of any consent and also exceeded the scope of a search incident to

a lawful arrest; and (4) the search of the residence could not be supported by the protective sweep

doctrine. (D.I. 16, Appellant's Op. Br. in *Wilson v. State*, No.446,2001). The Delaware

Supreme Court affirmed the Superior Court's judgment after concluding that Wilson did not

have standing to contest the police search.

This record clearly demonstrates that Wilson was afforded a full and fair opportunity to

litigate his Fourth Amendment claims in the Delaware state courts. Furthermore, Wilson has not

alleged that a structural defect exists in the Delaware criminal system that prevented a full and

fair opportunity to litigate his Fourth Amendment claims. Accordingly, the court denies

Wilson's two Fourth Amendment claims as barred by *Stone*.

### B. Ineffective assistance of counsel

In claim three, Wilson contends that the attorneys who represented him provided

ineffective assistance at the suppression hearing, at his second trial, and on direct appeal. The

record reveals that Wilson exhausted state remedies for these ineffective assistance of counsel

allegations by presenting them to the Delaware Supreme Court in his post-conviction appeal, and

the Delaware Supreme Court denied these claims as meritless. Therefore, the court can only

grant habeas relief if the Delaware Supreme Court's decision was contrary to, or an unreasonable

application of, clearly established Federal law, as determined by the Supreme Court.

The clearly established federal law governing ineffective assistance of counsel claims is

the two-pronged standard enunciated by *Strickland v. Washington*, 466 U.S. 668 (1984) and its

progeny. *See Wiggins v. Smith*, 539 U.S. 510 (2003). Under the first prong, the petitioner must

9

demonstrate that "counsel's representation fell below an objective standard of reasonableness," with reasonableness being judged under professional norms prevailing at the time counsel rendered assistance. *Strickland*, 466 U.S. at 688. The second prong requires the petitioner to demonstrate "there is a reasonable probability that, but for counsel's error the result would have been different." *Id.* at 687-96. A reasonable probability is a "probability sufficient to undermine confidence in the outcome." *Id.* at 688.

Finally, a petitioner must make concrete allegations of actual prejudice and substantiate them or risk summary dismissal. *See Wells v. Petsock*, 941 F.2d 253, 259-260; *Dooley*, 816 F.2d at 891-92. Although not insurmountable, the *Strickland* standard is highly demanding and leads to a "strong presumption that the representation was professionally reasonable." *Strickland*, 466 U.S. at 689.

In Wilson's case, the Delaware Supreme Court identified *Strickland* as the appropriate standard and concluded that Wilson failed to satisfy the two-part test in *Strickland. Wilson*, 2004 WL 220320, at *3. Consequently, the state supreme court's denial of Wilson's ineffective assistance of counsel claims was not "contrary to" clearly established Federal law. *Williams*, 529 U.S. at 406 (holding that when a "run-of-the-mill state-court decision applie[s] the correct legal rule from [Supreme Court] cases to the facts of a prisoner's case," the decision is not "contrary to" that precedent).

The court must also determine whether the state court's rejection of Wilson's ineffective assistance claims involved an "unreasonable application of" *Strickland. See* 28 U.S.C. § 2254(d)(1). "The unreasonable application test is an objective one – a federal court may not grant habeas relief merely because it concludes that the state court applied federal law

10

erroneously or incorrectly." *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005)(citing *Wiggins v. Smith*, 539 U.S. 510, 520-21 (2003)).   Rather, a federal habeas court must objectively evaluate the state court decision on the merits and determine whether the state court reasonably applied the correct rule to the specific facts of the petitioner's case. *See Williams*, 529 U.S. at 409, 412-13; *Matteo*, 171 F.3d at 891.

Wilson first contends that counsel's failure to subpoena the Medical Examiner ("M.E.") to testify at his second trial constituted ineffective assistance because it deprived him of the opportunity to confront a witness.  (D.I. 16, at 20.)  Given Wilson's failure to provide further explanation, the court turns to documents filed in his Rule 61 motion in an attempt to flesh out the instant claim, and concludes that Wilson's true problem is with the inability to question the M.E. about a discrepancy regarding the weight of cocaine seized by the police.  (D.I. 14, State's Op. Br. In Wilson v. State, No.379,2003, at 9.)  After the police seized the cocaine, they preliminarily reported that the drugs weighed approximately 16 grams.  However, the M.E.'s report indicates that the drugs actually weighed 13.83 grams.  According to Wilson, this discrepancy indicated a need to question the M.E. about the methods employed for weighing and testing the drugs as well as the chain of custody.

The Delaware Supreme Court denied this claim because Wilson failed to establish the requisite prejudice under *Strickland*.  The state court noted that Wilson did not "set forth with particularity what advantages he would have gained through the Medical Examiner's in court testimony." Wilson's instant claim suffers from the same defect, which provides the court with a sufficient  reason to deny the claim.  The Delaware Supreme Court also opined that Wilson was charged with trafficking cocaine weighing 5 to 50 grams, and therefore, it did not matter if the

11

drugs weighed 16 grams or 13.83 grams because "either weight would have been sufficient to convict" Wilson of the offense. Based on the record, the court concludes that the Delaware Supreme Court's determination did not involve an unreasonable application of the *Strickland* framework.

In his second allegation, Wilson contends that appellate counsel performed deficiently by failing to argue that the second trial violated his right against double jeopardy. During Wilson's Rule 61 proceeding, counsel explained that he did not raise the double jeopardy issue on direct appeal because he believed the issue was "totally frivolous." (D.I. 14, Appellant's Op. Br. in *Wilson v. State*, No.370,2003, at 24.) Counsel's decision was based on the fact that, prior to Wilson's second trial, the Superior Court considered and rejected the same issue in a motion to dismiss because the alleged discovery violation that prompted the initial mistrial did not constitute the type of prosecutorial misconduct that would bar a re-trial for double jeopardy purposes. Given the Superior Court's prior dismissal of the same double jeopardy issue as meritless, counsel's decision was objectively reasonable and also did not prejudice Wilson. Thus, the court concludes that the Delaware Supreme Court's conclusion was a reasonable application of the *Strickland* standard to the facts of Wilson's case.

Wilson's final allegation of ineffective assistance criticizes counsel's performance during the suppression hearing. Specifically, Wilson contends that counsel should have called him to testify at the suppression hearing in order to establish Wilson's standing to challenge the police search of Ms. Davis' townhome. The Delaware Supreme Court rejected this claim after concluding that Wilson was not prejudiced by counsel's alleged failure. First, Wilson failed to "suggest with particularity what trial counsel should have done to establish Wilson's standing to

contest the search." *Wilson*, 2004 WL 220320, at *3. Second, considering the fact that the trial court denied the motion to suppress after determining as a matter of state law that Ms. Davis validly consented to a police search of her home, the issue of Wilson's standing was irrelevant to the legality of the search. Because the Delaware Supreme Court properly analyzed the facts under the strictures of *Strickland*, the court concludes that the state court's holding regarding Wilson's failure to demonstrate prejudice was a reasonable application of that standard.

Accordingly, the court denies Wilson's three ineffective assistance of counsel claims because they do not warrant relief under § 2254(d)(1).

### C. Double Jeopardy

In his fourth claim, Wilson contends that his conviction was obtained in violation of his right against double jeopardy. Wilson exhausted state remedies by presenting this claim to the Delaware Supreme Court on appeal from the denial of his Rule 61 motion. Nevertheless, the court is procedurally barred from reviewing this claim on the merits due to the fact that the state courts dismissed the claim after invoking an independent and adequate state procedural rule. Specifically, both the Superior Court and the Delaware Supreme Court concluded that the claim was formerly adjudicated in Wilson's motion to dismiss his second trial, and therefore, the claim was procedurally barred under Delaware Superior Court Rule 61(i)(4). *Wilson,* 2004 WL 220320, at *2. The Delaware Supreme Court also noted that Wilson did not raise the double jeopardy issue on direct appeal.[4] *Id.*

---

[4]Although the Delaware Supreme Court did not explain the significance of that failure, a defendant's failure to raise an issue on direct appeal would constitute a procedural default under Delaware Superior Court Criminal Rule 61(i)(3). *See, e.g., Gattis v. State*, 697 A.2d 1174, (Del. 1997).

13

The dismissal under Rule 61(i)(4) constituted a plain statement that the state court decisions rested on state law grounds, and this court has consistently held that Delaware Superior Court Criminal Rule 61 is an independent and adequate state ground precluding federal habeas review. *See Harris v. Reed,* 489 U.S. 255, 263-65 (1989); *see Y1st v. Nunnemaker*, 501 U.S. 797 (1991), *St. Louis v. Carroll,* - F. Supp. 2d -, 2006 WL 1109461, at *4 (D. Del. Apr. 26, 2006)(collecting cases). Consequently, the court cannot provide federal habeas review of this claim unless Wilson establishes cause for his procedural default and actual prejudice resulting therefrom, or that a miscarriage of justice will result if the court refuses to review this claim. *See* 28 U.S.C. § 2254(a); *Coleman v. Thompson,* 501 U.S. 722, 750-51 (1991); *Caswell v. Ryan,* 953 F.2d 853, 860-61 (3d Cir. 1992).

Wilson does not address the procedural default under Rule 61(i)(4). Rather, he addresses the failure to raise the issue on direct appeal, and explicitly blames counsel for that default. (D.I. 16, at 13.) An ineffective assistance of counsel claim can only establish cause for a procedural default if it is determined that counsel did, in fact, provide constitutionally ineffective assistance. *Murray v. Carrier*, 477 U.S. 478, 488-89 (1986); *Edwards v. Carpenter*, 529 U.S. 446, 451-51 (2000). As previously explained, the court has concluded that appellate counsel did not provide constitutionally ineffective assistance. Therefore, counsel's actions do not excuse Wilson's procedural default.

In the absence of cause, the court does not need to reach the question of prejudice. *See Smith v. Murray,* 477 U.S. 527, 533 (1986). Wilson also has not demonstrated that a fundamental miscarriage of justice will result from failure to review this claim.

Accordingly, the court is procedurally barred from reviewing Wilson's double jeopardy

14

claim.

### D. *Brady* violation

In his final claim, Wilson alleges that his conviction is invalid because the prosecution violated *Brady* by withholding Ms. Davis' consent form in the first trial. Wilson procedurally defaulted this claim in the state courts, however, because he did not raise a *Brady* claim on direct appeal or in his post-conviction proceeding, and any attempt to raise this issue in a new Rule 61 motion and then appeal that decision would be barred by Delaware Superior Court Rule 61(i)(2).[5] *See Lawrie v. Snyder*, 9 F. Supp. 2d 428, 453-54 (D. Del. 1998). Wilson does not allege, and the court cannot discern, any cause for his failure to raise this *Brady* claim on direct appeal or in his post-conviction proceedings. Moreover, the court cannot apply the miscarriage of justice doctrine to excuse Wilson's procedural default because he has not presented a colorable claim of actual innocence.

Accordingly, the court will deny this claim as procedurally barred.

### E. Motion for summary judgment

Wilson filed a motion for summary judgment during the pendency of this proceeding. (D.I. 15.) After thoroughly reading the motion, the court concludes that it is actually a memorandum in support of Wilson's petition. The court notes that it considered the arguments contained in the motion to the extent the arguments supplement and explain the claims originally

---

[5]Although Wilson did raise the issue of the consent form in his motion to suppress filed prior to his second trial, and in his Rule 61 proceedings, he only discussed the issue in terms of a discovery violation under state law, not in terms of a *Brady* violation. Consequently, he did not exhaust state remedies because he did not "fairly present" the instant claim to the state courts. *See Gibson v. Scheidmantel*, 805 F.2d 135, 138 (3d cir. 1986); *Pauls v. Kearney*, 2000 WL 1346693, at *2 (D. Del. Sept. 12, 2000).

alleged in Wilson's form petition.  However, to the extent Wilson's motion for summary judgment should be considered as a motion, the court will deny it as moot in light of the foregoing opinion.

## V. CERTIFICATE OF APPEALABILITY

When a district court issues a final order denying a § 2254 petition, the court must also decide whether to issue a certificate of appealability. *See* Third Circuit Local Appellate Rule 22.2.  A certificate of appealability is appropriate when a petitioner makes a "substantial showing of the denial of a constitutional right" by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

Further, when a federal court denies a habeas petition on procedural grounds without reaching the underlying constitutional claims, the prisoner must demonstrate that jurists of reason would find it debatable: (1) whether the petition states a valid claim of the denial of a constitutional right; and (2) whether the court was correct in its procedural ruling. *Slack*, 529 U.S. at 484.

The court concludes that Wilson's petition does not warrant federal habeas relief. Reasonable jurists would not find this conclusion to be debatable.  Consequently, the court declines to issue a certificate of appealability.

## VI. CONCLUSION

For the reasons stated, Wilson's petition for habeas relief pursuant to 28 U.S.C. § 2254 is denied.  An appropriate order shall issue.

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE


JAMES A. WILSON,                          )
                                          )
             Petitioner,                  )
                                          )
        v.                                )        Civ. A. No. 04-1363-GMS
                                          )
THOMAS L. CARROLL, Warden,                )
                                          )
             Respondent.                  )


## ORDER

For the reasons set forth in the Memorandum Opinion issued this date, IT IS HEREBY

ORDERED that:

1. James A. Wilson's petition for the writ of habeas corpus filed pursuant to 28 U.S.C

§ 2254 is DISMISSED, and the relief requested therein is DENIED.  (D.I. 1.)

2. Wilson's motion for summary judgment is DENIED as moot.  (D.I. 15.)

3. The court declines to issue a certificate of appealability.


Dated: August ___, 2006

                                    UNITED STATES DISTRICT JUDGE